**EASTERN ELECTRIC APPARATUS REPAIR CO., INC., Plaintiff–Appellee,**

v.

**JEFFERSON SMURFIT CORP., Defendant–Appellant.**

No. 93–3634.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1994.

Decided July 12, 1994.

Mary M. Bonacorsi, Thompson & Mitchell, St. Louis, MO, William H. Hughes, Jr. (argued), Robert L. Crewdson, Alston & Bird, Atlanta, GA, for plaintiff-appellee.

Robert G. Raleigh, Hoagland, Fitzgerald, Smith & Pranaitis, Alton, IL, William H. Stanhope (argued), Lisa L. Heller, Robins, Kaplan, Miller & Ciresi, Atlanta, GA, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.*

CUMMINGS, Circuit Judge.

In late April 1991, a turbine generator used by Jefferson Smurfit Corp. ("Smurfit") at its container board plant in Alton, Illinois, was severely damaged. In early May 1991, Eastern Electric Apparatus Repair Company, Inc. ("Eastern Electric") agreed to repair the damaged turbine for $288,500. Eastern Electric agreed to begin work on May 10, 1991, and to have the generator ready for use by June 25, 1991.

In order to encourage timely completion—Smurfit knew that it would be subject to a $160,000 charge from its local utility company if the generator was not back in service by July 1, 1991—Smurfit agreed to pay Eastern Electric a bonus if the repair work was completed prior to June 25, 1991.[1] For its part, Eastern Electric agreed that if it failed to complete the repairs by June 25, it would pay Smurfit, "as liquidated damages," $2,000 for each day after June 25 that the repair work remained unfinished—up to a maximum of $10,000—plus an additional $40,000 if the repair work was not completed by July 1, the day Smurfit would incur the $160,000 utility charge. The addendum to the contract setting out the bonus and liquidated damages provided that "[n]otwithstanding the above [bonus/liquidated damages agreement], Smurfit shall have all rights and remedies provided elsewhere in th[e] [contract]."

Finally, Eastern Electric expressly warranted that "[a]ll the material and workmanship" it would provide would be "merchantable and fit for the purpose intended and [ ] fulfil and conform to the specifications required by th[e] Project...." Eastern Electric further agreed that its "warranties [would] extend to all consequential damages suffered by [Smurfit] by reason of [Eastern Electric's] breach thereof."

Eastern Electric did not complete the repair of the turbine generator until November 25, 1991, five months after the agreed date of completion. As a result of this delay, Smurfit suffered substantial losses. Eastern Electric undertook to repair all physical damage caused during the repairs and agreed to pay Smurfit $50,000 in liquidated damages for delay (or more accurately, Eastern Electric credited Smurfit this amount on the billing

---

* The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

1. Smurfit agreed to pay "Eastern a bonus payment of Two Thousand Dollars [$2,000.00] per day for each calendar day that the acceptance of the work [was] completed earlier than June 25, 1991, up to a maximum total amount of Fourteen Thousand Dollars [$14,000.00], and a maximum total early completion of seven [7] days."

invoice it sent Smurfit). Smurfit, however, sought compensation for utility charges and lost profits incurred as a result of Eastern Electric's failure to complete repairs in a timely fashion.

In response, Eastern Electric filed a declaratory judgment action in the United States District Court for the Southern District of Illinois to establish that Smurfit was entitled to no more than the $50,000 provided for by the liquidated damages provision. Smurfit filed a counterclaim seeking an unspecified amount of actual damages above the liquidated amount. Eastern Electric, subsequently, filed a motion for summary judgment. In June 1993, the district court granted Eastern Electric's motion, holding that the liquidated damages provision covered all damages resulting from Eastern Electric's failure to perform the required repairs on Smurfit's generator in a timely manner. Smurfit now appeals.

### Analysis

■ When it agreed to repair Smurfit's generator, Eastern Electric made two promises: one, that it would complete its work in a timely manner; and two, that all material and workmanship it provided would be merchantable and fit for the purposes intended. Eastern Electric clearly broke the first promise. Smurfit claims that it also broke the second—Smurfit alleges that, among other things, Eastern Electric failed to perform necessary tests, used defective parts, and employed inexperienced workers (Br. 7), allegations that for the purpose of summary judgment we must assume to be true.[2] More importantly, Smurfit contends that the damages for Eastern Electric's breach of this second promise are not limited by the liquidated damages provision of the agreement. That provision, Smurfit insists, liquidates only the damages resulting from Eastern Electric's breach of its promise to complete its work in a timely manner.

Unfortunately, the language of the liquidated damages provision does not support Smurfit's contention. Nothing in the provision indicates that its application is limited to damages caused by the breach of a particular promise. Rather the provision liquidates a category of damages, those resulting from "delay in operational completion," without regard to the cause of the delay. And since the damages Smurfit seeks here—profits lost and utility charges incurred while the generator work remained unfinished—are clearly the damages resulting directly from delay, they are capped by the liquidated damages provision.

■ Smurfit, however, argues that because it expressly reserved all rights and remedies not provided for in the liquidated damages provision, it is entitled to recover all damages—including delay damages—resulting from Eastern Electric's breach of its promise that all material and workmanship provided would be merchantable and fit for the purposes intended. Smurfit, in other words, argues that its reservation of "other rights and remedies" trumps the limitations on recovery imposed by the liquidated damages provision. But if Smurfit is correct—if Smurfit is entitled to recover *all* damages including damages resulting from delay in the completion of the generator overhaul—the liquidated damages provision is rendered almost meaningless. Rather, we understand the reservation of rights to entitle Smurfit to seek recovery of all damages resulting from a breach by Eastern Electric other than those resulting from "delay in completing operational acceptance," damages which the parties agreed to liquidate. Smurfit, in other words, is entitled only to the $50,000 in damages for delay—the same conclusion reached by the district court.

The determination of the district court is, therefore, AFFIRMED.

---

**2.** Whether these facts constitute a breach of warranty as a matter of law is a separate question. But that question need not be addressed here since we hold *infra* that even if Eastern Electric did breach its warranty of workmanlike performance, the damages Smurfit claims—profits lost and utility charges incurred as a result of Eastern Electric's failure to complete the repairs on the generator until November 25, 1991—are delay damages capped by the liquidated damages provision.